## Latshaw's Estate

*Thomas Hallman*, for exceptant; *Frederick B. Smillie*, contra.

HOLLAND, P. J., May 7, 1931.—Ira D. Latshaw is the son of Ira D. Latshaw, Sr., and Jessie V. Latshaw, the former of whom is deceased. Being in his minority and entitled to an estate in the hands of a former guardian, this court, on September 23, 1926, appointed The Pennsylvania Company for Insurances on Lives and Granting Annuities guardian of his estate, and it subsequently received the estate belonging to its ward from his former guardian amounting to $40,171.05. It thereafter received the distributive share of its ward in the proceeds of sale of certain real estate in Royersford, Pa., amounting to $4232.93, and from the estate of his deceased father the sum of $15.28.

The late minor arrived at the age of twenty-one years on September 7, 1930, and an account of the guardian was filed October 31, 1930, showing a balance in its hands belonging to its ward amounting to $45,625.66, composed of the unconverted investment securities set forth on page four of the account, carried at $17,500, and cash.

It will be noted that the balance of principal to be delivered to the ward, as set forth on page four of the account, is composed mainly of cash but partly of securities.

The ward filed an exception to the account November 29, 1930, in which he objects to having awarded to him in kind said securities and contends that it is the duty of the guardian to convert the securities into cash and have the cash awarded to him.

At the hearing on said exception, however, which took place December 10, 1930, the ward restricted his exception to two of the securities, namely, "2500 E. J. Sutton 1st mge. 6s due 1 Mar. 1930 2500," and "5000 Bond & Mge. 4718 Chestnut St. 6% due on demand $5000," and the said ward agreed to take the other securities forming the balance of the estate shown on page four of the account in kind.

This exception raises two questions, first, whether it is the duty of a guardian to settle with its ward in cash only and whether it is its duty to invest in securities only that mature or upon which payment is due contemporaneous with the arrival of the ward at his majority. We are clearly of the opinion that both questions should be answered in the negative.

If the investment is a proper one, the guardian may turn it over to his ward when settling with him, and he is not obliged to turn it into money: *Falconer's Estate*, 11 Pa. C. C. 354. The same rule applies as to the delivery of a security

by a guardian to a succeeding guardian: Nagle's Estate, 8 Luzerne Legal Reg. 269.

It is not the duty of a guardian to invest in securities that mature or fall due in payment before or at the attainment by the ward of his majority. The soundness of this principle is proven by the obvious impossibility, or at least impracticability, of the guardian being required to find investments maturing or payable at the majority of his ward. He would have to find mortgages or other legal investments that mature at odd times and have terms of odd fractions of years and months. Not being able to do this, he would in the latter years or months of his incumbency be put to the other alternative of permitting the ward's money to lie uninvested, with consequent loss of income.

Section 41 (a), 1, 2 and 3 of the Fiduciaries Act of 1917 applies to guardians: Kaufman's Estate, 10 Erie Co. L. J. 287.

Paragraph 3 of clause (a) of this section provides:

"In case the said moneys shall be invested as set forth in paragraph 1 of this clause, or conformably to the directions of the court under paragraph 2 of this clause, the said fiduciary shall be exempted from all liability for loss on the same in like manner as if such investments had been made in pursuance of directions in the will creating the trust, it being hereby declared that the investments mentioned in this section are legal investments of moneys by fiduciaries."

The effect of this paragraph is that if an investment is a legal one when made and has been made in the manner prescribed by paragraphs one and two of said clause (a), the guardian is exempted from all liability for loss on the same. As a corollary to this and taken in connection with the principles above referred to, it necessarily follows that if the legal investment is worth less at the time of the arrival of the ward at his majority, the ward must take it in kind at its reduced value. The guardian having invested as prescribed by the law, the law regards him as having done all that is humanly possible for the preservation of the estate.

The only remaining question, therefore, is whether at the time the two investments under consideration were made they were of the class prescribed as legal under section 41 of the act, supra, and whether in making them the conditions preliminary to placing this class of investments were complied with.

As to the security in question designated as part of the balance on page four of the account as "2500 E. J. Sutton 1st mge. 6s due 1 Mar. 1930 2500," the testimony shows that the accountant as guardian for exceptant held two $1000 bonds in which the accountant as guardian as aforesaid is the obligee and an individual by the name of Elwyn J. Sutton is the obligor. The accountant holds a similar bond for $500. These bonds of Elwyn J. Sutton are of an aggregate issue of $1,200,000. They are dated March 1, 1925, and secured by a mortgage executed by said Elwyn J. Sutton to the accountant company as trustee for said bondholders. The mortgage is a first lien on premises Nos. 1211, 1213 and 1215 Chestnut Street, Philadelphia, consisting of the ground and a twelve-story terra-cotta and brick store and office building known as the Reyburn-Bailey Building. The property was appraised January, 1925, preliminary to placing the mortgage.

It was appraised first by Herman W. Coxe, the real estate officer of the accountant, at $2,000,000; $1,250,000 for the ground and $750,000 for the improvements. This appraisement was submitted to accountant in writing. One Frank H. Massey, a recognized expert in Philadelphia real estate values, afterwards made an appraisement of the premises, valuing the ground at $1,320,000 and the improvements at $680,000, or an aggregate of $2,000,000,

which agreed with the appraisement of accountant's said real estate officer in the aggregate. Massey's appraisement was also submitted to accountant in writing. The said first mortgage of $1,200,000, or 60 per cent. of the appraised value, was then placed and the bonds issued in a like sum in the aggregate as aforesaid.

It is apparent that this security comes squarely within the class described in section 41 (a), 1, *supra*, as "bonds, payable not more than twenty years after date, of one or more individuals, secured by a deed or deeds of unencumbered real estate in this Commonwealth conveyed to a corporation organized under the laws of this Commonwealth and authorized to act as trustee, in trust for the benefit of all such bondholders, but the total amount of any such bond issue shall not exceed two-thirds of the fair value of the real estate securing it, and the trustee shall not be exempted, by contract or otherwise, from responsibility for performing the ordinary duties of trustees."

The bonds were payable five years from date; they were of an individual, secured by a mortgage (or deed) to accountant company (organized under the laws of Pennsylvania and authorized to act as trustee), the mortgage being in trust for these bondholders, and the total issue was less than two-thirds of the value of the real estate, it being 60 per cent. thereof, rather than sixty-six and two-thirds per cent. of the fair value of the real estate. The "fair value" was determined by a "reputable person who [was] especially familiar with real estate values" and "the value placed thereon" was submitted "in writing."

The security described on said page four of the account as "5000 Bond & Mge 4718 Chestnut St., 6% due on demand 5000," is, according to the testimony, a trust certificate issued by the accountant company certifying that the accountant company as guardian of exceptant is the owner of an undivided interest to the extent of $5000 in a mortgage of which accountant company is the assignee of the mortgagee (through some intermediate assignments) of a mortgage for $35,000 (since reduced to $30,000) and in which one Philip Rhine, an individual, is the mortgagor, being a first lien on premises No. 4718 Chestnut Street, Philadelphia. This mortgage is held in trust by the accountant company for the various holders of these certificates. It was acquired August 31, 1926, and extended by the accountant company for five years from January 23, 1927 (it being dated January 23, 1923).

Before taking the assignment of this mortgage to the accountant company, trustee, said company had No. 4718 Chestnut Street appraised by its real estate officer, Herman W. Coxe. He inspected. and appraised it July 1, 1926, at $47,800, and returned the appraisement in writing to the company. It had been appraised by Frank H. Massey, the real estate expert, May 7, 1924, at $45,000. It was decided to take the lower appraisement of $45,000 as the basis of considering the mortgage rather than Mr. Coxe's higher appraisement, though the company would have been justified in taking the latter, Mr. Coxe being also an expert in real estate values. It will be observed that $30,000, the amount due on the mortgage, is two-thirds of $45,000, the lower appraisement.

The trust certificate for $5000 comes within the description of that class of legal security defined by section 41 (a), 1, *supra*, as "trust certificates, issued by a trust company organized under the laws of this Commonwealth, certifying that the holders thereof are respectively the owners of undivided interests in deposits, with such trust company, of securities in which trust funds may be invested under the preceding provisions of this clause."

It is a trust certificate for $5000 issued by the accountant company (a Pennsylvania corporation) certifying that the accountant company, guardian of exceptant, the holder thereof, is the owner of an undivided interest to the

extent of $5000 in the mortgage of $30,000 which it holds as trustee, which, as we have demonstrated by the description thereof, is such a security as trust funds may be invested in under the preceding provisions of the said clause of said section 41.

We conclude that both these securities in question were legal securities when the investment therein was made and that they were invested in with the precautions and preliminary inspection required by law, and that, therefore, even if they are of less value now than then, the guardian has done its full duty and the ward must take them in kind.

The exception is dismissed.                     Aaron S. Swartz, Jr., Norristown, Pa.